UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES I. WYNN, SR.,

                                    Plaintiff,                              22-CV-6352 (CJS)

vs

PHILLIPS LYTLE LLP, KEVIN
HOGAN, JOHN F. SPERANZA,
MARK UPDEGRAFF, WARD                                    DECISION and ORDER
REDUX LLC, ADAM J. BELLO,
MALIK EVANS, SHAWN BURR,
And GERDA R. CASSARA,

                                    Defendants.

_____


INTRODUCTION

On August 22, 2022, James I. Wynn, Sr. ("Plaintiff"), proceeding *pro se*, filed the

subject action and paid the filing fee.  The Complaint alleges that Defendants conspired

to violate Plaintiff's civil rights by effecting an illegal and fraudulent foreclosure on a parcel

of real estate owned by him.  Now before the Court are the following motions to dismiss

the Complaint for failure to state a claim: A motion by John Speranza ("Speranza"), ECF

No. 7; a motion by Adam Bello ("Bello"), ECF No. 9; a motion by Kevin Hogan ("Hogan")

and Phillips Lytle, LLP ("Phillips Lytle"), ECF NO. 11; a motion by Malek Evans ("Evans"),

ECF No. 13; and a motion by Mark Updegraff ("Updegraff"), ECF No. 23.  For the reasons

discussed below the motions are granted and this action is dismissed with prejudice.

**Additionally, Plaintiff is ordered to show cause why the Court should not impose a**

**filing sanction on him, barring him from filing any additional actions or asserting**

**any new claims in already pending actions relating to the subject matter of this action without first obtaining written approval from the undersigned.**

BACKGROUND

The Complaint refers to an attached "Verified Complaint," but there is no such attachment. However, Plaintiff filed a "Verified Complaint" in a related action, 22-CV-6355 CJS, ECF No. 1-1, which appears to be the attachment to which the Complaint refers.[1] The gist of the pleading is that Plaintiff lost ownership of a piece of real estate through foreclosure following a failed attempt to avoid foreclosure through bankruptcy, and believes that the events leading to the foreclosure sale were all part of a racist conspiracy involving lenders, attorneys, state and federal judges, the Mayor of Rochester, and the County Executive of Monroe County.

More specifically, this action pertains to 3840 Lake Avenue in Rochester, New York ("the property"),[2] which was formerly owned by Plaintiff, but was sold at a foreclosure sale on April 11, 2022. In or about 2013, American Tax Funding, which had purchased $55,000.00 in tax liens on the property from Monroe County, commenced an action in New York State Supreme Court, Monroe County, to foreclose the liens. American Tax Funding was represented in the foreclosure action by its attorneys, Phillips Lytle.

---

[1] In ruling upon the subject motions to dismiss, the Court has considered the Complaint, the "Verified Complaint," and other documents of which the Court can take judicial notice, including Plaintiff's Bankruptcy Court records. *See, e.g., Chien v. Skystar Bio Pharm. Co.*, 623 F. Supp. 2d 255, 260 (D. Conn. 2009) ("[I]n ruling on a motion to dismiss, a court is not limited to the factual allegations of the complaint but may consider "documents attached to the complaint as exhibits or incorporated in it by reference, to matters of which judicial notice may be taken or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993). Therefore, in considering a *res judicata* defense, a court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the Court. *See, e.g., Ambase*, 326 F.3d at 72–73; *Hackett v. Storey*, 2003 WL 23100328, at *2 (D.Conn.2003)"), *aff'd*, 378 F. App'x 109 (2d Cir. 2010).
[2] This was a rental property, not Plaintiff's primary residence.

Seeking to avoid the foreclosure, Plaintiff considered filing a Chapter 13 Bankruptcy action and retained an attorney, William Rieth ("Rieth"), for that purpose. Alternatively, Plaintiff also considered taking out a loan to pay the debt, and mentioned to Rieth that he had applied for a loan from a particular lender. However, Plaintiff was not granted the loan, and he suspects that Rieth influenced the lender not to approve the loan. In that regard, Plaintiff, who is black, speculates that Rieth was motivated by racial animus and a desire to obtain Plaintiff's property for himself. [3]

Nevertheless, Plaintiff continued to retain Rieth to file a Chapter 13 bankruptcy petition. However, according to the Complaint, Rieth "intentionally sabotaged [Plaintiff's] bankruptcy plan so [that he] would lose everything that [he] owned." Meanwhile, Bankruptcy Court records indicate that Plaintiff's Chapter 13 bankruptcy failed because he did not comply with the court-ordered plan. More specifically, for reasons that are unclear Plaintiff insisted that the Bankruptcy Court ought to allow him to sell the property free and clear of the existing liens. In any event, Rieth withdrew from representing Plaintiff. Plaintiff reportedly attempted to retain other attorneys to represent him in the bankruptcy matter, but was unable to do so, which he also attributes to a conspiracy against him. The Honorable Paul Warren, U.S. Bankruptcy Judge ("Judge Warren"), converted Plaintiff's Chapter 13 to a Chapter 7 liquidation. Plaintiff appealed aspects of the bankruptcy proceeding to the Honorable David Larimer, Senior U.S. District Judge ("Judge Larimer"), who affirmed Judge Warren's rulings.

---

[3] Plaintiff's oft-repeated mantra throughout his submissions is, in sum and substance, that everything done to him is because he is "82 years old and an African American male." Verified Compl. at ¶ 1.

Eventually New York State Supreme Court, Monroe County, issued a Judgment of Foreclosure and Sale. In April 2022, the court-appointed foreclosure referee, Speranza,[4] conducted the public sale, and Updegraff purchased the property.

On August 22, 2022, Plaintiff filed the subject action proceeding *pro se*, and sued essentially everyone connected to the foreclosure, including Rieth, Judges Warren and Larimer, Phillips Lytle, Speranza and Updegraff.  The Complaint also purports to sue other persons who had nothing to do with the sale, including Mayor Evans and County Executive Bello.  The Complaint demands that 3840 Lake Avenue be returned to Plaintiff, along with millions of dollars in money damages.

The Complaint alleges a wide-ranging, racially-based conspiracy against Plaintiff beginning with Rieth's alleged attempt to sabotage Plaintiff, and followed by Judges Warren and Larimer's alleged attempts during the bankruptcy proceedings "to cover up for the biased discriminating [by] William Rieth" and permit the foreclosure action to proceed.[5]  The Complaint alleges, nonsensically, that Plaintiff should have been allowed to sell the property and avoid the foreclosure, but Judges Warren and Larimer "refused to allow [him] to sell the properties because it would expose the racist thing that William Rieth had done."  The Complaint further baldly asserts that the other Defendants were participants in the conspiracy.

---

[4] *See*, Speranza Mem. of Law at pp. 6–7 ("Plaintiff owned the Property and failed to the pay real property taxes that were assessed on it over a period of several years. Ultimately, Plaintiff owed this tax liability to Monroe County, which sold and assigned its rights in this regard to American Tax Funding LLC ("ATF"). After Plaintiff failed to pay the debt, ATF filed an action in the New York State Supreme Court, Monroe County ("State Court"), seeking a judgment of foreclosure and sale relative to the Property, in order to satisfy the debt. The State Court granted ATF summary judgment on its claims and issued a Judgment of Foreclosure and Sale, directing the sale of the Property at public auction to satisfy the tax debt.  In the Judgment of Foreclosure and Sale, the State Court appointed Speranza as its referee to carry out duties that the State Court specified in its Judgment of Foreclosure and Sale, including providing the requisite notice and conduct of a public auction of the Property and disbursement of the proceeds from that sale.").
[5] *See*, Plaintiff's Chapter 7 proceeding, *In re Wynn*, 13-20304, W.D.N.Y.

The Court *sua sponte* dismissed the claims against Judges Larimer and Warren as both frivolous and barred by absolute judicial immunity. *See*, Decision and Order, ECF No. 20.

Regarding the remaining claims, as mentioned earlier the following motions to dismiss the Complaint are now pending: A motion by Speranza to dismiss the Complaint based on absolute judicial immunity and the *Rooker-Feldman* doctrine, ECF No. 7; a motion by Bello based on lack of personal jurisdiction/improper service, statute of limitations and failure to state a claim, ECF No. 9; a motion by Phillips Lytle and attorney Kevin Hogan ("Hogan") based on failure to state a claim, *res judicata* and collateral estoppel, ECF NO. 11; a motion by Evans based on failure to state a claim, ECF No. 13;[6] and a motion by Updegraff based on failure to state a claim, ECF No. 23.

The Court subsequently issued several Motion Scheduling Orders, the last of which directed Plaintiff to file any opposition papers by December 16, 2022.  However, Plaintiff never filed opposition papers.[7]  Instead, Plaintiff filed baseless and unsubstantiated requests seeking extensions of time, recusal of the Court, and transfer

---

[6] Evans contends that the Complaint contains no allegations of involvement by himself or the City of Rochester. *See*, ECF No. 13-6 ("This Complaint does not involve the City of Rochester and the Plaintiff simply inserted the name of the Mayor of Rochester without substantiation of any kind.").

[7] The motions to dismiss were filed on October 18, 2022, October 19, 2022, October 27, 2022, and November 8, 2022, respectively.  The Court thus gave Plaintiff 38 days from the date of the filing of the last motion to file a response, which is more than double the fourteen-day response deadline provided for in the Local Rules of Civil Procedure.  Plaintiff could have easily met that deadline if he had chosen to do so rather than filing numerous meritless requests for other types of relief.  In any event, Plaintiff's failure to respond to the motions is really irrelevant, since the Court must nevertheless evaluate the legal sufficiency of the Complaint. *See, e.g., Barrios v. Bello*, No. 20 CIV. 5228 (JPC), 2021 WL 1630594, at *4 (S.D.N.Y. Apr. 27, 2021) ("The Court must still decide an unopposed motion to dismiss pursuant to Rule 12(b)(6) on its merits. *See McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000).") (other citation omitted).  Moreover, judging from his past submissions, any response from this Plaintiff would have likely consisted of more untethered-to-reality racist conspiracy theories rather than any substantive legal analysis.

of venue, and then, when those applications were denied, filed Notices of Appeal to the Second Circuit. However, as explained below those appeals are frivolous and procedurally improper, and therefore do not deprive the Court of jurisdiction to consider the motions to dismiss.

DISCUSSION

Plaintiff's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court must construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Plaintiff's Interlocutory Appeals Do Not Deprive the Court of Jurisdiction

Plaintiff presently has two interlocutory appeals pending before the Second Circuit. The Court will briefly explain how those appeals came about. On November 22, 2022, the Court issued a Decision and Order stating:

> On October 27, 2022, the Court issued a Motion Scheduling Order (ECF No. 19) concerning several motions to dismiss that had been filed by Defendants. On November 4, 2022, the *pro se* Plaintiff filed an application for a 60-day extension of his deadline to respond to the Defendants' motions. On November 7, 2022, the Court denied Plaintiff's request, stating in pertinent part: "Plaintiff's request for a 60-day extension of the response deadline contained in the Motion Scheduling Order (ECF No. 19) is DENIED. Plaintiff offers no justification for the request, other than his belief that the original deadline was unfair. Plaintiff's response deadline remains November 23, 2022."

> Subsequently, another defendant filed an additional motion to dismiss, and the Court issued a new Motion Scheduling Order (ECF No. 24), setting a new date [(December 16, 2022)] for Plaintiff to respond to all of the motions to dismiss.

> On November 21, 2022, Plaintiff filed a combined motion (ECF No. 26), for reconsideration of the Court's order denying his motion for a 60-day

6

extension of the prior motion scheduling deadlines, and for the Court to recuse itself.

Plaintiff's application (ECF No. 26) is denied.   The request for reconsideration is denied as moot, since the original Motion Scheduling Order (ECF No. 19) and the Order (ECF No. 22) for which Plaintiff is seeking reconsideration have been superseded by the Amended Motion Scheduling Order (ECF No. 24).   The request for recusal is also denied, since Plaintiff has not offered any legitimate basis for the Court to recuse itself in this matter.   Instead, Plaintiff makes only conclusory and false allegations concerning a conspiracy between the undersigned and the defendants in this action.  *See*, ECF No. 26 at p. 2 ("I am aware that it is a large conspiracy between you, Judge Larimer, Judge Warren, William Rieth, and others to not only take advantage of me because of my race but also [to] deny me my civil rights, due process, etc. to entrap me because I am pro se and have been denied legal representation.").

Decision and Order, ECF No. 28.

On December 2, 2022, Plaintiff filed a motion (ECF No. 29) again requesting a 60-day extension of his deadline to respond to the motions to dismiss, purportedly so that he could retain an attorney.  The application also requested that Plaintiff be "allowed to sue for legal fees for counsel and out of pocket expenses."   In support of the application Plaintiff asserted, in pertinent part, that he was being mistreated because of his race, and that the undersigned was involved in a conspiracy with Judge Larimer to cover up the wrongdoing alleged in the Complaint.

On December 6, 2022, the Court issued a Decision and Order (ECF No. 30) denying the application, stating:

On December 2, 2022, the *pro se* Plaintiff filed a motion in this action, ECF No. 29.   The motion, the third filed by Plaintiff in the past month and consisting of 121 pages, essentially continues Plaintiff's pattern of demanding relief based on bald assertions of racism and unfounded complaints of mistreatment by the Court. To the extent Plaintiff is requesting a transfer of venue, an extension of time, appointment of counsel,

reimbursement of fees, reassignment of this action to "the chief judge," or any other specific relief from the undersigned, the application (ECF No. 29) is denied as lacking any merit.

Decision and Order, ECF No. 30.

On December 16, 2022, Plaintiff filed a Notice of Appeal (ECF No. 31) to the U.S. Court of Appeals for the Second Circuit, asserting that he was appealing "the Decision and Order of th[e] Court entered on November 22, 2022," referring to the Court's penultimate ruling discussed earlier, ECF No. 28.  The Notice of Appeal asserted, in pertinent part, that this Court was biased against Plaintiff and should recuse itself; that the Court had "refused" to allow Plaintiff "to get legal representation";[8] and that venue should be changed.

Then, on December 29, 2022, Plaintiff filed a second Notice of Appeal, ECF No. 33, purporting to appeal the Court's most-recent Decision and Order, ECF No. 30.  The Notice of Appeal did not indicate the basis for the appeal.

Despite the two pending appeals, the Court finds that it retains jurisdiction over this action.  In that regard, the applicable law is clear:

Normally, "[t]he filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). "The divestiture of jurisdiction rule is, however, not a *per se* rule. It is a judicially crafted rule rooted in the interest of judicial economy, designed 'to avoid confusion or waste of time resulting from having the same issues before two courts at the same time.'" *United States v. Rodgers*, 101 F.3d

---

[8] Plaintiff's assertion that this Court prevented him from obtaining counsel is false.  Besides that, Plaintiff is an extremely prolific *pro se* litigator who had every opportunity to retain an attorney before commencing the slew of actions he recently filed in this Court.  To the extent he actually wished to retain an attorney (which the Court doubts) and was unable to do so, it is probably because any potential attorney would immediately perceive that the claims Plaintiff insists on pursuing are meritless.  In any event, Judge Warren previously noted that even when Plaintiff had representation he refused to follow his attorneys' advice. *See*, ECF No. 11-8 at p. 15.

247, 251 (2d Cir. 1996) (quoting *United States v. Salerno*, 868 F.2d 524, 540 (2d Cir. 1989)). For example, the rule "does not apply where an appeal is frivolous [,] [n]or does it apply to untimely or otherwise defective appeals." *China Nat. Chartering Corp. v. Pactrans Air & Sea, Inc.*, 882 F. Supp.2d 579, 595 (S.D.N.Y. 2012) (citation omitted).

*Nunez-Polanco v. Capra*, No. 22-CV-4475 (LTS), 2023 WL 35208, at *2 (S.D.N.Y. Jan. 3, 2023) (emphasis added).

Here, the Court finds that divestiture of jurisdiction is not applicable, since Plaintiff's interlocutory appeals are frivolous. In that regard, Plaintiff is appealing this Court's denial of his requests for extensions of time, recusal, and transfer of venue. However, Plaintiff never provided any sufficient cause for the Court to grant any of his requests. Accordingly, the Court fails to see how the pending interlocutory appeals have any potential merit. Additionally, the interlocutory appeals are procedurally defective. *See, id*. at *2 ("Because Plaintiff is attempting to appeal from a nonfinal order that has not been certified for interlocutory appeal, the notice of appeal is plainly defective. Accordingly, this Court retains jurisdiction of this action."). The Court therefore finds that it retains jurisdiction to decide the pending motions to dismiss.

Standards Applicable to Motions Under Rule 12(b)(6)

Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6) and the standards for such an application are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted); *see also*, id. at 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citations and internal quotation marks omitted.)

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester,* No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal* ); *see also, In re Myovant Scis. Ltd. Section 16(b) Litig.*, 513 F. Supp. 3d 365, 373 (S.D.N.Y. 2021) ("The plaintiffs claim that discovery of the relevant disclosure schedule may establish the portion of the purchase price allocated to Movant shares.  . . .  But "it is only by taking care to require allegations that reach the level suggesting [a plausible claim] that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence." *Twombly*, 550 U.S. at 559, 127 S.Ct. 1955. Because their unsupported speculation does not amount to a reasonable foundation, the plaintiffs cannot avoid dismissal by claiming

that discovery will reveal a basis for their claim.").

It is well settled that "Complaints containing "only conclusory, vague, or general allegations that the defendants engaged in a conspiracy fail to state a claim." *Eldars v. State Univ. of New York at Albany*, No. 20-2693, 2021 WL 4699221, at *3 (2d Cir. Oct. 8, 2021) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002)); *see also, Brady v. IGS Realty Co. L.P.*, No. 20-3512, 2021 WL 4302737, at *2 (2d Cir. Sept. 22, 2021) ("Brady's complaint . . . vaguely references a "civil conspiracy" without any facts supporting a meeting of the minds or alleging discriminatory animus.  His allegations of an effort by a state-court justice and both parties' attorneys to undermine his litigation do not state a claim for relief that is 'plausible on its face.' *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.").

<u>The Complaint Fails to Plausibly State Any Actionable Claim or Wrongdoing by the Defendants</u>

Here, Plaintiff's factual allegations concerning the alleged conspiracy to steal his real estate are so utterly conclusory, speculative, paranoid and implausible as to be "clearly baseless" and "frivolous."[9]  The bald contention that Rieth sabotaged Plaintiff's efforts to salvage his property, and that the other defendants then conspired to cover up Rieth's wrongdoing, all supposedly because of a shared desire to racially discriminate against Plaintiff, is exactly the type of implausible claim that should be dismissed under

---

[9] In a Bankruptcy Court Decision and Order issued on July 27, 2017, Judge Warren observed that Plaintiff's "allegations of a conspiracy against him, while doubtlessly genuine in his eyes, have no basis in fact, and no evidence is offered in support." ECF No. 11-8 at p. 3; *see also, id*. at p. 5 (Referring to Plaintiff having alleged in the Bankruptcy Action "a grand conspiracy orchestrated to cause Mr. Wynn to lose title to his real estate holdings."); *id*. at p. 9 (Noting that Plaintiff had "doubled down on is assertion that the entire case has been a calculated, racially motivated conspiracy to deprive him of title to his real estate holdings.").  (The Decision and Order by Bankruptcy Court provides key background information concerning Plaintiff's claims in this action and illustrates how the outcome of Plaintiff's bankruptcy actions was dictated not by any conspiracy but by his own failure to comply with the conditions imposed by that Court.)

the *Twombly* standard. *See, e.g.*, Verified Complaint, filed in 22-CV-6355 CJS, ECF No. 1-2 at ¶ 12 ("[T]he Bankruptcy Docket and the District Court Docket will also tell you what happened in this case.  Plaintiff learned fast that this was not about taxes.  It was more about racial discrimination and taking away everything you could from this black elderly man."); *see also*, *id*. at ¶ 16 ("Judge Warren and Judge Larimer made sure they used their authority as a judge to not expose a racist individual."); ¶ 22 ("I felt Judge Larimer and Judge Warren had a lot to do with Plaintiff not getting honest legal representation."); ¶ 23 ("If I had to guess, I would say Judge Warren, William Rieth, George Rieber and Judge Larimer had something to do with John Warner not representing me."); ¶ 25 ("Gerda B. Cassara foreclose[ed] on my property at 3840 Lake Avenue. . . .  Only Judge Larimer and Judge Warren could get the Court and City of Rochester and others to falsify their records to go along with a criminal act such as this.");  ¶ 28 ("Plaintiff is not surprised that Gerda Cassara would conspire with Judge Warren and Judge Larimer and pull an illegal criminal stunt such as this because even though her mother was a wonderful lady, Gerda Cassara is a racist biased discriminating back-stabbing lady."); ¶ 30 ("The fact remains that even though Judge Warren has signed the Chapter 7 Discharge on November 26, 2019, it was also meant to be a trap for the Plaintiff to force Plaintiff back into bankruptcy . . . .  How is Judge Warren being a judge in bankruptcy court conspiring with others to violate the same statutes he swore to uphold?  This is like the fox guarding the hen house.").

Because the Complaint so clearly fails to plausibly state any actionable claim the Court need not address the additional particular grounds for dismissal raised by Defendants' motions.  Although, the Court agrees with Speranza that he has absolute

judicial immunity from claims arising from his court-appointed role as foreclosure referee. *See, e.g., Ferrara v. Bello*, No. 19-CV-6917-FPG, 2020 WL 360967, at *3–4 (W.D.N.Y. Jan. 22, 2020) ("'[T]he law is clear that court referees are entitled to absolute judicial immunity from liability with respect to acts taken in the scope of their duties." *Khrapko v. Splain*, 389 F. Supp. 3d 199, 205 (W.D.N.Y. 2019).  . . .  'Nonjudicial officers, such as referees, are entitled to absolute immunity when their duties 'have an integral relationship with the judicial process.' *In Re Bucksin Realty Inc.*, No. 1-13-40083-nhl, 2016 WL 5360750, at *12 (E.D.N.Y. Sept. 23, 2016) (quoting *Green v. Kadilac Mortg. Bankers, Ltd.*, 936 F. Supp. 108, 115 (S.D.N.Y. 1996)). "It is only when they act in the clear absence of all jurisdiction that they lose their immunity." *Id*. (internal quotation omitted).").

Additionally, the Court agrees with Speranza that to the extent Plaintiff is asking this Court to revisit or set aside the judgment of foreclosure by the New York State Supreme Court, Monroe County, it lacks jurisdiction over such a claim due to the *Rooker-Feldman* doctrine *See, e.g.,  Ferrara v. Bello*, 2020 WL 360967, at *2 ("Under the *Rooker-Feldman* doctrine, federal district courts are precluded from exercising jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).").

Leave to Amend is Denied

Plaintiff has not requested leave to amend in the event the Court were to grant Defendants' motions.   Ordinarily, though, a court will not dismiss a *pro se* complaint

without giving the plaintiff a chance to amend.  Here, however, the Court declines to give Plaintiff an opportunity to amend since it would be futile to do so for the reasons already discussed.   Namely, Plaintiff's allegations are so conclusory, far-fetched, and unreasonable, that no amount of additional pleading would result in an actionable claim. *See, Hariprasad v. New York*, 722 F. App'x 102, 103 (2d Cir. May 17, 2018) ("Ordinarily, the district court should not dismiss a *pro se* plaintiff's complaint without granting leave to amend when a liberal reading of the complaint gives any indication that a valid claim might be stated.  But, here, amendment would be futile, as there is no indication that Hariprasad might plead a valid claim[.]"); *see also, Maunsell v. WCAX TV*, 477 F. App'x 845, 846 (2d Cir. 2012) ("[Plaintiff's] conclusory assertions of statewide judicial bias were insufficient to state a claim for relief. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).").

<u>Phillips Lytle's Request for a Filing Sanction</u>

Hogan and Phillips Lytle maintain that Plaintiff is a vexatious litigant and have requested an order from the Court restricting his ability to file additional actions against Phillips Lytle without first getting permission from the Court.  In support of that request, Phillips Lytle asserts the following: 1) this is the third duplicative and frivolous "conspiracy" action that Plaintiff has filed against Phillips Lytle concerning the same foreclosure action; 2) given the history of this matter, Plaintiff could not have had an objective good faith expectation of prevailing in this action; 3) Plaintiff's meritless and repetitive lawsuits have already caused a significant waste of time and expense for the defendants and the Court; and 4) it does not appear that any lesser sanction will deter Plaintiff from filing additional meritless actions.

District Courts have discretion to impose leave-to-file sanctions on litigants who abuse the judicial process:

> [W]e are mindful that "[a] district court may, in its discretion, impose sanctions against litigants who abuse the judicial process." *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir.1996). We have previously set forth several factors to be considered in restricting a litigant's future access to courts:   "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties." *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir.1986).

*Iwachiw v. New York State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005). Before imposing such a sanction the court must give the litigant notice and an opportunity to be heard. *See, Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) ("The unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard.") (collecting cases).

The Second Circuit recognizes a three-stage progression leading to such a sanction. *See, Viola v. U.S.*, 481 Fed. Appx. 30, 31 (2d Cir. 2012) ("*Viola*") ("[T]he procedure for imposing leave-to-file sanctions involves three stages: (1) the court notifies the litigant that future frivolous filings might result in sanctions; (2) if the litigant continues this behavior, the court orders the litigant to show cause as to why a leave-to-file sanction order should not issue; and (3) if the litigant's response does not show why sanctions are

not appropriate, the court issues a sanctions order.") (internal quotation marks and citation omitted).

Here, Plaintiff clearly appears to be a strong candidate for a leave-to-file injunction. In that regard, a review of the Court's CM/ECF records indicates that Plaintiff is a highly-litigious individual who previously filed at least ten civil actions and seventeen bankruptcy appeals, many of which pertain to the same subjects as the instant lawsuit. Additionally, at or about the same time Plaintiff commenced this action he filed four other actions, also now assigned to the undersigned, which are largely duplicative of the instant meritless action. Plaintiff's repeated assertion of frivolous and/or meritless claims against essentially the same group of defendants, including persons who are clearly immune from suit and others who seemingly have no actual involvement in the matter, as well as his continued failure to recognize or admit that both the conversion of his Chapter 13 action and the subsequent foreclosure resulted from his own missteps and not from some racist conspiracy, suggest that Plaintiff's primary objective is to vex and harass, and that he is likely to continue filing additional such actions unless a filing sanction is imposed.

Furthermore, Plaintiff filed his most-recent spate of lawsuits despite having previously been warned that his filing of frivolous or vexatious lawsuits could result in a filing injunction against him. Specifically, in Summary Orders involving appeals from actions filed by Plaintiff in this Court involving the same matters involved in the instant lawsuit, the Second Circuit cautioned Plaintiff by stating:

> Appellant has filed a number of frivolous matters in this court, including the appeals docketed under 2d Cir. 14-1928; 2d Cir. 14-2022; 2d Cir. 14-3011; 2d Cir. 14-3829; 15-1909; 2d Cir. 15-2380; 2d Cir. 15-2457; 2d Cir. 15-2983; 2d Cir. 15-2984; and 2d Cir. 16-428. Accordingly, Appellant is hereby warned that the continued filing of duplicative, vexatious, or clearly meritless appeals, motions, or other papers, will result in the imposition of a sanction,

which may require Appellant to obtain permission from this Court prior to filing any further submissions in this Court (a "leave-to-file" sanction). *See In re Martin-Trigona*, 9 F.3d 226, 229 (2d Cir. 1993); *Sassower v. Sansverie*, 885 F.2d 9, 10 (2d Cir. 1989).

*Wynn v. Mercier*, 6:14-CV-6189 DGL, ECF No. 29 (Second Circuit Mandate); *Wynn v. American Tax Funding*, 6:14-CV-6208 DGL, ECF No. 29 (Second Circuit Mandate); *see also, Wynn v. Reiber, Chapter 13 Trustee*, 6:15-CV-6444 DGL, ECF No. 28 (Second Circuit Mandate). Although this warning referred specifically to a potential filing sanction by the Second Circuit and not the district court, the Court believes that it gave Plaintiff a sufficient first-stage warning as referenced in *Viola*.

Accordingly, the Court finds that it is now at the second stage of the *Viola* three-stage process set forth above. The Court will therefore direct Plaintiff to show cause why, based on a consideration of the *Safir* factors set forth above, a leave-to-file injunction should not be imposed against him.

CONCLUSION

Defendants' motions to dismiss (ECF Nos. 7, 9, 11, 13 and 23) are granted. The Complaint clearly fails to state an actionable claim against any Defendant, including any non-moving defendant, and is dismissed with prejudice. The Clerk of the Court is directed to terminate this action.

**Additionally, Plaintiff is ordered to show cause in writing, within thirty (30) days of the date of this Decision and Order, why the Court should not impose a filing sanction on him, barring him from filing any additional actions or asserting any new claims in already pending actions relating to the subject matter of this action without first obtaining written approval from the undersigned. Plaintiff's**

**failure to respond within thirty days will result in the issuance of such a filing restriction.**

Although plaintiff paid the filing fee to commence this action, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438 (1962).

SO ORDERED.

DATED:        February 22, 2023
             Rochester, New York

CHARLES J. SIRAGUSA
United States District Judge